```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA             :
                                     :
                                     :      18-cr-179 (JSR)
        -v-                          :
                                     :      OPINION AND ORDER
LOUIS PINA,                          :
                                     :
     Defendant.                      :
                                     :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Now before the Court is defendant Louis Pina's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

The compassionate release statute, as modified by the First Step Act, provides that after certain administrative exhaustion requirements are met,[1] and after considering the factors enumerated in 18 U.S.C. § 3553(a), "the court . . . may reduce the term of imprisonment . . . if it finds that — extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

---

[1] As the parties agree, the administrative exhaustion requirements have here been met because, on April 21, 2020, Pina filed a request for compassionate release with the warden of FCI Allenwood (which the warden denied), and more than 30 days have passed.

1

Although Pina's motion for compassionate release was precipitated by prison conditions arising from the ongoing COVID-19 pandemic, it is nonetheless different from most such motions.  Pina's principal argument is not that he is at heightened risk of succumbing to COVID-19 (although he does raise such an argument); rather, his principal argument is that his somewhat precarious mental health is deteriorating because of lockdown procedures adopted to prevent the spread of COVID-19.

When Pina was five years old, his father was brutally stabbed to death in front of him. Since then, he has reported symptoms of mental illness, including symptoms consistent with post-traumatic stress disorder ("PTSD"), such as depression and suicidal thoughts. Pina reports that he was previously able to keep his symptoms under control. Prior to his incarceration, he self-medicated with illegal drugs. Inside prison, he tried to reduce his mental health problems by remaining busy and exercising. Now, confined to his cell for approximately 22 hours every day, Pina reports worsening symptoms, including flashbacks, nightmares, and insomnia.

Four mental health specialists have examined Pina in connection with this case, three recently and one prior to his original sentencing. Although agreeing that Pina suffers from psychological difficulties, the specialists disagree as to

2

whether Pina suffers from PTSD. The most extensive report was submitted by Dr. Sanford Drob prior to sentencing. Dr. Drob not only spoke at length with Pina, but also conducted a number of standard tests, as well as a review of Pina's history. Dr. Drob concluded that Pina exhibited tendencies consistent with PTSD.

The other three specialists had the advantage of interviewing Pina more recently, but the disadvantage of having limited time to spend with him. Dr. A. Gemberling, a Bureau of Prisons ("BOP") psychologist, opined that Pina did not report or exhibit symptoms of PTSD but did report symptoms consistent with insomnia and attention-deficit/hyperactivity disorder. Dr. Ray Sharretts, a BOP psychiatrist, did not offer a diagnosis but said that Pina reported that he relives, daily, the childhood memory of his father being stabbed 17 times in front of him. Dr. Sharretts also noted that Pina felt depressed and wanted to harm himself following his grandparents' death three years ago. At that time, he was taken to a medical facility by ambulance and observed for 72 hours.

Dr. Alexander Bardey, a defense-retained psychiatrist, opined that, because Pina suffered from significant psychological trauma left untreated until the present, Pina now exhibits "symptoms of posttraumatic stress disorder, including re[-]experiencing of the trauma through flashbacks and nightmares, night terrors, avoidance, suspiciousness,

3

depression, anxiety, irritability, [and] mood swings." The Court also had the opportunity to question Dr. Bardey directly at the time of the hearing on this motion, and his conclusions were fully consistent with the more extensive report prepared by Dr. Drob at the time of sentencing. Based on this, and on the Court's review of the entire record, the Court concludes that, more likely than not, Pina does suffer from PTSD -- a hardly surprising conclusion given what he witnessed in the murder of his father.

It is likewise not surprising that Pina's efforts to cope with his PTSD have been seriously undermined by the conditions imposed on prisoners because of the pandemic.  The very steps being taken to prevent Pina from contracting the virus have aggravated his mental condition. Dr. Bardey opined that the present lockdown has led to "a worsening of Mr. Pina's chronic symptoms, which has le[]d him to experience acute symptoms of depression, anxiety, and irrational fears of being harmed or killed in custody, as well as irrational fears of harm coming to his infant daughter, girlfriend and mother."  Dr. Bardey concluded that under present circumstances, fear for Pina's well-being is justified, and the possibility of suicide cannot be dismissed. Even after taking account of the more equivocal analyses offered by Dr. Gemberling and Dr. Sharretts, the Court concludes that Pina is experiencing increasingly severe mental

4

distress as a result of the lockdown procedures imposed at FCI Allenwood and that this might well lead him to seek to harm himself. This danger constitutes an "extraordinary and compelling reason" warranting a reduction in the term of imprisonment.

The Government points to the policy statements of the Sentencing Commission, particularly U.S.S.G. § 1B1.13 Application Note 1(A), which lists as medical conditions that can offer "extraordinary and compelling" reasons only "terminal illness" and conditions that "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." The Government argues that, "even assuming arguendo that the measures implemented by BOP to prevent the spread of COVID-19 have had a negative impact on Pina's overall mental health, this would simply not be a basis for granting the Motion because Pina has not shown that his current mental health condition is preventing him from providing self-care while in custody." Opp. to Motion for Compassionate Release, ECF No. 274, at 6.

The Court disagrees. Pina's efforts to practice self-care in terms of his PTSD while in prison have relied upon activities -- e.g., exercise -- that have been substantially curtailed to prevent the spread of COVID-19. More generally, his confinement

5

to his cell for 22 hours a day cannot help but exacerbate his depression and anxiety. With the spread of COVID-19 continuing to accelerate nationwide, the Court has no reason to believe that FCI Allenwood (where Pina is incarcerated) will lift its present precautions in the foreseeable future. Accordingly, and based upon the doctors' reports, the Court concludes that this combination of circumstances "substantially diminish[] the ability of the defendant to provide self-care within the environment of" FCI Allenwood and that he "is not expected to recover" from those symptoms while incarcerated.

Even if this were not the case, moreover, as this Court held in United States v. Pinto-Thomaz, the compassionate release statute permits release "on grounds that are distinct from, but of similar magnitude and importance to, those specifically enumerated in Application Note 1 to U.S.S.G. §1B1.13." No. 18-CR-579 (JSR), 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020). Even if Pina's circumstances were not among the specific examples articulated by the Sentencing Commission, nevertheless, given the risk to his mental health imposed by the pandemic-related restrictions, his circumstances are of similar magnitude and importance to the circumstances enumerated by the Sentencing Commission.[2]

---

[2] The Government's reliance upon United States v. Boyd, No. 13 CR. 890 (LAP), 2020 WL 2732011 (S.D.N.Y. May 26, 2020), is

The Court next turns to the factors set forth in 18 U.S.C. § 3553(a). The Government does not argue that Pina is "a danger to the safety of any other person or to the community." See U.S.S.G. § 1B1.13(2). The nearly 20 months that he has already served in prison are more than sufficient to deter this offender from future misconduct. Indeed, there is every indication he is on the road toward rehabilitation, including studying for the GED and striving to repair his relationship with the mother of his daughter. Upon his release, the Court will require that he avail himself of appropriate psychological and/or psychiatric treatment.

The Court recognizes the importance of imposing sentences that reflect the seriousness of the offense, general deterrence, and avoiding unwarranted sentencing disparities. See id. § 3553(a)(2), (6). And the Court notes that, in imposing sentences on Pina's co-defendants, it considered the defendants'

---

misplaced. There, the Court found that the defendant's "physical conditions are not particularly severe and that the BOP is managing his conditions." Id. at *2. Here, the Court has found, consistent with the doctors' reports, that Pina's symptoms are severe enough to warrant justifiable concern for his well-being. Moreover, although the Court need not and so does not address this issue, the Court notes that a dispute exists regarding whether the BOP is adequately managing Pina's condition. For example, even though Dr. Sharretts prescribed medication to deal with Pina's chronic insomnia, his counsel alleges that FCI Allenwood still refuses to provide him with such medication. Letter to Court from Grainne E. O'Neill dated June 25, 2020 (filed under seal).

relative culpability. Nevertheless, this does not mandate that a sentence must remain in place when extraordinary and compelling circumstances warrant a reduction. Pina has served more than half of his 39-month sentence, and appropriate conditions of home confinement accompanying his release will ensure that Pina serves out he remainder of his sentence in a manner sufficient to "afford adequate deterrence" while also "provid[ing] the defendant with needed . . . treatment in the most effective manner." See 18 U.S.C. § 3553(a)(2)(B), (D).

For the foregoing reasons, Pina's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is granted.[3]

An order directing the Bureau of Prisons to release the defendant will issue by no later than July 2, 2020. Counsel are directed to confer regarding proposed conditions of home confinement and to jointly submit to the Court a Proposed Order (or competing Proposed Orders, if no agreement can be reached) by noon on July 1, 2020.

SO ORDERED.

Dated:  New York, NY
        June 29, 2020                  _____
                                        United States District Judge

---

[3] Because the Court grants Pina's motion on the basis of his deteriorating mental health, it does not consider his argument that his mental health symptoms place him at increased risk for contracting and/or succumbing to COVID-19.